UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO. 22-CV-10035

ADRIAN JOSE VELASQUEZ FIGUEROA,

     Plaintiff,

v.

JP MORGAN CHASE & CO.

     Defendant.

_____/

## COMPLAINT

Adrian Velasquez Figueroa files this Complaint for breach of Article 4 of the New York Uniform Commercial Code and conversion against the above-captioned Defendant JP Morgan Chase & Co, and alleges as follows:

### THE PARTIES

1.    Plaintiff Adrian Velasquez Figueroa is a citizen of the countries of Spain and Venezuela.

2.    Plaintiff Adrian Velasquez Figueroa was the originator of the funds transferred at issue in this litigation.

3.    Defendant, JP Morgan Chase & Company ("JP Morgan") is a National Banking Corporation and a citizen of the states of New York and

Delaware. Defendant JP Morgan is incorporated under the laws of Delaware and maintains its principal place of business in New York.

4.    Defendant JP Morgan was the recipient and/or beneficiary bank of the funds transferred that are at issue.

### JURISDICTION & VENUE

5.    This court has personal jurisdiction over Defendant J.P. Morgan because Defendants conducted and/or currently conduct business and/or service activities within the State of New York, have committed and/or caused torts within this district and other violations of law as set forth herein, and have breached agreements or promises to Plaintiff, as set forth herein, which directly impact Plaintiff.

6.    This Court has subject matter jurisdiction over all claims for relief pursuant to 28 U.S.C. §1332(a)(1) because the parties, as citizens of different States, are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.    Venue is proper in this Court under 28 U.S.C. §§1391 (b)-(c) as certain transactions, practices and courses of business, and wrongful acts as alleged herein have occurred in this District, and because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## BACKGROUND

8.     This litigation concerns a single funds transfer of $1,291,902.66.

9.     On November 26, 2018, Mr. Velasquez Figueroa initiated a wire for the payment of legal fees from his bank in Geneva, Switzerland, Reyl,[1] to the law firm of Lewis, Baach, Kaufman, Middlemiss, PLLC with a bank account at JP Morgan.

10.     The funds were transmitted and received by JP Morgan.  However, JP Morgan wrongfully retained the funds and never credited the bank account of Lewis, Baach, Kaufman, Middlemiss, PLLC.

11.     JP Morgan's failure to execute the payment order and retention of the funds is a breach of 4-A-302 of the New York Uniform Commercial Code.

## APPLICABLE STATUTES

12.     The fund transfer that is the subject of this complaint is governed by Article 4A of the New York Uniform Commercial Code[2], and consistent with the principles of common law.

13.     Section 4- A- 302 of Article 4A outlines the obligations of a receiving bank in execution of payment order.  It goes on to say that the "receiving bank is obliged to issue, on the execution date, a payment order complying with the sender's

---

[1] https://www.reyl.com/en/geneva

[2] Throughout this complaint provisions of article 4A of the New York Uniform Commercial Code are cited as "section 4A- ___" or "4A__".

order and to follow the sender's instructions concerning … the means by which payment orders are to be transmitted in the funds transfer.

14.     Section 4-A-305 of Article 4A states that "[I]f a funds transfer is completed by execution of a payment order by the receiving bank in breach of Section 4-A-302 results in delay in payment to the beneficiary, the bank is obliged to pay interest to either the originator or the beneficiary of the funds transfer for the period of delay caused by the improper execution."

15.     Section 4-A-305 of Article 4A further stated that if execution of a payment order by a receiving bank in breach of Section 4-A-302 results in noncompletion of the funds transfer, the bank is liable to the originator for its expenses in the funds transfer and for incidental expenses and interest losses.

16.     Section 4-A-305 of Article 4A also states that attorney's fees are recoverable if demand for compensation is made and refused before an action is brought on the claim.

# FACTS

17.     On **November 26, 2018**, Plaintiff Adrian Velasquez Figueroa initiated a wire in the amount of $1,291, 902.66 from Reyl Bank.

18.     The wire was sent to the law firm of Lewis, Baach, Kaufman, and Middlemiss, PLLC (the "law firm") for the payment of attorney's fees.

19.     The receiving bank was Defendant JP Morgan.



20.     JP Morgan received the funds, but did ***not credit*** the account of Lewis, Baach, Kaufman, and Middlemiss, PLLC.

21.     After multiple phone calls with JP Morgan, Defendant refused to credit the law firm's account for the wire.

22.     Defendant JP Morgan further affirmed that it would not return the funds to the originator.

23.     After Defendant received additional correspondence from Plaintiff concerning the location and the status of the wire, Defendant JP Morgan affirmed that it was refusing to release the funds because Mr. Velasquez Figueroa was sanctioned by the Office of Foreign Asset Control. (OFAC)

24.     On or about November 26, 2018, when the wire was sent to Defndant, Plaintiff Mr. Velasquez Figueroa was not sanctioned by OFAC.

25.     In fact, Plaintiff Mr. Velasquez Figueroa was not sanctioned until ***January 8, 2019***.  *See* OFAC Press Release dated January 8, 2019.

26.     Moreover, even if Plaintiff Mr. Velasquez Figueroa were sanctioned when the wire was sent to Defendant, the payment of attorney's fees is permissible under the Code of Federal Regulations governing sanctioned individuals.

27.     Specifically, Section 31 C.F.R. 591.507 provides:

> Receipts of payment of professional fees and reimbursement of incurred expenses for the provision of legal services authorized pursuant to § 591.506(a) to or on behalf of any person whose property and interests in property are blocked pursuant to § 591.201, are authorized from funds originating outside the United States, provided that the funds received by U.S. persons as payment of professional fees and reimbursement of incurred expenses for the provision of legal services authorized pursuant to § 591.506(a) do not originate from:
>
> > **(1)** A source within the <u>United States</u>;
> >
> > **(2)** Any source, wherever located, within the possession or control of a U.S. <u>person</u>; or
> >
> > **(3)** Any individual or entity, other than the person on whose behalf the legal services authorized pursuant to § 591.506(a) are to be provided, whose property and interests in property are blocked pursuant to any part of this chapter or any Executive order.

28.     The wire satisfies each of these three legal requirements.

29.     First, the wire did not originate from a source within the United States

30.     Second the wire did not originate from any source wherever located within the possession or control of a U.S. person.

31.     Third, the wire was transmitted by Mr. Velazquez for the benefit of Mr. Velazquez.

32.     Despite being provided with this information, Defendant JP Morgan insisted on holding the funds.

33.    Despite being provided with this information, Defendant JP Morgan refused to return the funds to Plaintiff's account at Reyl – the originating bank account.

34.    Despite being provided with this information, Defendant JP Morgan refused to credit the law firm's account.

35.    Instead, Defendant JP Morgan has held these funds for more than 1000 days, after Plaintiff first transmitted this wire was transmitted and has consistently refused to return the funds.

36.    Plaintiff Mr. Velasquez Figueroa has made the appropriate claims required under Article 4A for return of funds.

37.    All conditions precedent to the filing of this lawsuit have been met.

## FIRST CLAIM
## BREACH OF 4-A-302

38.    Paragraphs 1 through 37 are restated and realleged with the same force and effect as if fully stated and alleged herein.

39.    Section 4-A-302 of Article 4 governs the obligations of a receiving bank to execute the payment orders following a wire transfer.

40.    Pursuant to Section 4-A-302(1)(b) of Article 4, a receiving bank is required to carry out the sender's instructions in the most expeditious means and is obliged to transmit payment.

41.    Defendant JP Morgan did not execute the sender's instructions.

42.     Defendant JP Morgan did not execute the payment order as required.

43.     The funds transfer was never completed as requested and required.

44.     Instead, Defendant JP Morgan has held on to this money for almost four years.

45.     As a result of the foregoing, Plaintiff Mr. Velasquez Figueroa has been damaged.

WHEREFORE, Plaintiff prays that this Court issue a judgment in the amount of $1,291,602.22, plus costs, interests from November 26, 2018, and consequential damages in an amount to be determined by the Court, and attorney's fees.

## SECOND CLAIM
## BREACH of 4-A-302

46.     Paragraphs 1 through 37 are restated and realleged with the same force and effect as if fully stated and alleged herein.

47.     At all times relevant herein, the money that was the subject of the Funds Transfer (the "Money") was the property of Plaintiff Mr. Velasquez Figueroa.

48.     Plaintiff Mr. Velasquez Figueroa intended the Money be paid to the law firm.

49.     Plaintiff Mr. Velasquez Figueroa initiated the Funds Transfer for the purpose of paying the Money to the law firm.

50.     On November 26, 2018, Defendant JP Morgan received the Money in its capacity as the receiving bank.

51.     On November 26, 2018, Defendant JP Morgan took possession of the Money and refused to credit the law firm account or return the money to Plaintiff Mr. Velasquez Figueroa.

52.     Defendant JP Morgan had no authority to retain possession of the Money.

53.     Plaintiff Mr. Velasquez Figueroa has demanded the return of the Money.

54.     Defendant JP Morgan has been and still is wrongfully retaining the Money. After written demand for its return.

55.     As a result of Defendant JP Morgan's wrongful retention of the Money, Plaintiff Mr. Velasquez Figueroa has been unable to transfer the Money to the law firm.

56.     As a result of the foregoing, Plaintiff Mr. Velasquez Figueroa has been damaged

WHEREFORE, Plaintiff prays that this Court issue a judgment in the amount of $1,291,602.22, plus costs, interests from November 26, 2018, and consequential damages in an amount to be determined by the Court, and attorney's fees.

**THIRD CLAIM**
**CONVERSION**

57.     Plaintiff Mr. Velasquez Figueroa realleges and incorporates by reference paragraphs 1 through 37 as if stated herein.

58.     A wire in the amount of $1,291,602.22 was sent to JP Morgan.

59.     Plaintiff Mr. Velasquez Figueroa is the legal owner of the funds.

60.     Plaintiff Mr. Velasquez Figueroa has a possessory interest and/or right to the funds held by Defendant JP Morgan.  These funds belong to Plaintiff.

61.     Defendant JP Morgan has intentionally interfered with Plaintiff Mr. Velasquez Figueroa's right to his funds.

62.     Defendant JP Morgan has improperly exercised dominion over the funds belonging to Plaintiff Mr. Velasques Figueroa.

63.     Defendant JP Morgan has unlawfully and intentionally deprived Plaintiff Mr. Velasquez Figueroa of his funds.

64.     Plaintiff Mr. Velasquez Figueroa has demanded that Defendant JP Morgan return his funds and they have refused to do so.

65.     As a result of Defendant Morgan's intentional and unlawful conduct, Plaintiff Mr. Velasquez Figueroa has suffered monetary damages.

WHEREFORE, Plaintiff prays that this Court (i) issue a judgment for immediate return of his funds; (ii) award damages for loss of use or depreciation;

and (iii) enter a judgment and award damages for the value of any funds not delivered to Plaintiff.

## DEMAND FOR TRIAL BY JURY

66.    Mr. Velasquez Figueroa demands trial by jury of all Claims in the Complaint

## PRAYER FOR RELIEF

As to Claim One, Plaintiff prays that this Court issue a judgment in the amount of $1,291,602.22, plus costs, interests from November 26, 2018, and consequential damages in an amount to be determined by the Court, and attorney's fees.

As to Claim Two, Plaintiff prays that this Court issue a judgment in the amount of $1,291,602.22, plus costs, interests from November 26, 2018, and consequential damages in an amount to be determined by the Court, and attorney's fees.

As to Claim Three, Plaintiff prays that this Court (i) issue a judgment for immediate return of his funds; (ii) award damages for loss of use or depreciation; and (iii) enter a judgment and award damages for the value of any funds not delivered to Plaintiff plus costs and interests from November 26, 2018.

Respectfully submitted,

*/s/Andrew S. Feldman*
**FELDMAN FIRM PLLC**
150 S.E. 2nd Avenue, Suite 600
Miami, Florida 33131
Direct: (305) 714-9474
NY Bar No. 4864799
Email: afeldman@feldmanpllc.com


*/s/Marissel Descalzo*
(*pro hac vice* pending)
**TACHE BRONIS AND DESCALZO, P.A**
150 S.E. 2nd Avenue, Suite 600
Miami, Florida 33131
Office: (305) 537-9565
Florida Bar No. 669318
Email: mdescalzo@tachebronis.com